If it pleases the Court, I am Douglas Morse. I am representing Mr. Joseph Frederick in this case. This case involves an 18-year-old, that is, an adult under state law, who chose to display a banner in a peaceful manner on a public sidewalk in front of private homes with others, including non-students. He did it during the running of the Olympic Torch Relay, which is a commercially-sponsored event. The school's role in it was limited to allowing teachers, if they chose, to let students go watch and having the pep band play as the This was not a prank of any kind, despite the way the appellees would choose to characterize it. It was a carefully planned assertion by Mr. Frederick of his First Amendment rights. He was serious about this, both in the planning and the execution. He was not only an adult, he had, by the end of his junior year, he was a senior when this happened, by the end of his junior year he had enough credits to graduate with a good GPA, he was working a to graduate, two years of college, he's now a United States Marine. This was a serious expression by a serious person. He chose the circumstances of his assertion of his First Amendment rights carefully. He chose to do it off campus on a public sidewalk, just so that it wouldn't get mixed up with any assertions of high school jurisdiction. He did not come to school that day, had not been on campus, was not released with any class and under the supervision of any teacher. He was not part of any group of students who were being supervised by any teacher. He never came into school that morning at all? That's correct, he didn't. This is an open campus. Even if he had, when you are between classes, as he would have been had he been in school that day, he was free to come and go as he chose. But he did not go to school that day, parked his car away from the campus, never went on school property. His banner was obviously not obscene or vulgar, it did not incite or threaten violence. What do you think the banner means? Does it mean anything to you? That is a question that people have asked all along and Mr. Frederick was quite clear in his deposition and in his affidavits. He was intending by the banner to assert First Amendment free speech rights, which he considered in jeopardy in this country. He attempted to do it by creating a banner, a saying, that he thought was humorous, was a parody. He chose the words on it, he said, so that there would be some controversial content. Although the words themselves, the trial court found that there was a communicative intent. Although everybody, with one exception, who submitted information or affidavits or a deposition testimony, said they didn't know what it meant. The one exception was the principal, the only person in all of this who said, well that's an encouragement to illegal drug use. Everybody else said we don't know what it meant, but he did intend it as an assertion of his First Amendment rights. Is there any harm to your case if we assume that bong hits refers to marijuana smoking? If you take the principal's assumption about that at face value. Let's assume that. Does it matter to your case? It matters only in one sense. If that isn't involved, then there's a question, why isn't this better analyzed as a straight, adult, public place free speech case? In which case you only look at the exceptions, imminent incitation to exceptions. But, going back, assuming that it was a reference to marijuana, in that case, we submit that it is controlled directly by the Tinker case, rather than... Let me ask you something about that. One possibility is it's just meaningless humor to assert the it's something about marijuana smoking. Now, bong hits for Jesus, it's hard to see what bong hits have to do with Jesus. That's what supports the idea it's just absurd to be funny. Bong hits sounds like marijuana. That's what supports the idea it's encouragement to use marijuana, the school's notion. Let's suppose that what he held up was a sign saying, William F. Buckley says legalize marijuana. Totally unambiguous. Actually in her deposition... Would the rights be the same? Would the constitutional issue be the same, or would it be different? Yes, I believe it would. The Supreme Court has said that humor is just as protected as any other form of expression. Moreover, we know clearly from Supreme Court jurisprudence that foolish statements are just as protected as intelligent statements. Certainly the Supreme Court does not allow a public official to decide to what extent an expression is intelligent enough to merit First Amendment protection. You and I probably would agree that it wasn't a very effective humorous statement. Nobody that we thought was funny. It wasn't a very effective communication since no one knows what it means. If it had been Jesus for bong hitters, it might have had a different meaning. Its effectiveness was probably exactly what he intended, namely to assert the fact that he could make a non-disruptive, even nonsensical, humorous statement in public, off school campus, and be protected by the First Amendment. Let me ask you something about the off campus aspect. Most of the briefing is in terms of Tinker and Hazelwood and these other school free speech cases. What I'm wondering is, do they have anything to do with it? Is this just an adult in a public forum, a public sidewalk, not on school property? Not anyone who's either in school, like the kids in Tinker, wearing their black armbands in school. He's not in school. He's not at a school function. Is it just an adult on a sidewalk holding up a silly sign? I think it helps to analyze it that way. For example, if he had done this at the other end of the relay, about 10 miles away, there wouldn't have been any question. It's not a school case. Well, there wouldn't have been a principal grabbing him, either, if he had done it miles away. Say he had done it a block away, back where he parked, and the principal had seen it and was offended and seized it. In that case, I think it would be very clear that it's an adult in a public place case, not a student case, and the principal had exceeded her authority. What makes it a Tinker-Frazier argument, as opposed to an 18-year-old kid displaying a sign in a major public event? First of all, a very practical one, that we're here because the principal seized it and punished him, so it came up through the procedure of a school proceeding, leading to the question of whether the school had authority to do it. Our assertion is that whether you apply Tinker et al., or simply apply Term and Yellow and the other adult public place cases, the result is the same. It's beyond the authority of that public official. A good analogous case is this court's case in Birch v. Barker, which is where students put together, on their own time, with their own materials, a newspaper intending it to be distributed on campus, and the school said, you can't do it without us giving approval first. Here, the same dynamic occurred. It was created by students, on their own time, with their own materials, and although they did not intend to distribute it on campus, we do know that given the place they displayed it, a few students would, for a few seconds, have seen it. So that wasn't their intent. This court said in Birch v. Barker, in those circumstances, the Tinker test applies, and the school could not assert that kind of censorship authority, absent a showing of imminent substantial disruption of the educational process, which we know did not occur here. Basically, it's a four-square analogy to the facts in this case, and since the school district had admitted that there was no such disruption of the educational process in the school, we maintained that they also could not punish this expression in this case. The Chandler v. McMinnville School District is this court's clearest expression of how to handle those three big U.S. Supreme Court precedents, and we're very clear about that. When you've got school-sponsored speech, such as on school newspaper, the Hazelwood situation, the Hazelwood standard applies. When it's campus speech that is clearly obscene, then the Frazier standard applies. Otherwise, it falls under Tinker. We are not in either of those first two categories. Hence, Tinker applies if any student free speech analysis is appropriate at all. In the Burks v. Barker case, which I just cited, this court said, quoting Tinker, that a mere undifferentiated fear of some possible remote arm, the mere discomfort and unpleasantness that accompany an unpopular expression do not justify punishing free speech. One important adjunct to that is the fact that although some persons, no, I should say one person, the principal, found it to be personally offensive, and she's the only person we know of who found it to be personally offensive, mere personal offensiveness has never been a grounds to allow suppression of free speech. The Chandler v. McMinnville Court distinguished between controversial speech, that is, speech which is controversial because it is offensive to some official, and vulgar or lewd speech. Well, I think she found it more than just offensive. It wasn't her position that it advocated drug use in a school environment. I mean, she just said, I don't like it. Right. It was offensive to her because she thought that there was some possibility of some remote effect on some students that would be deleterious to the school's mission, as vague and remote as that, directly contrary to the actual imminent substantial disruption that is required by the Tinker standard and by this court in New York. Well, I gather this kid had pushed her buttons before. This kid was good at pushing buttons. There is no doubt about that, and I think that is the root of the principal's unfortunate overreaction here. Fortunately, the law does not permit a public official to violate the First Amendment because their buttons are pushed. To get where they want to go, the school district has had to stretch several theories to the point that they claim that on-campus rules of conduct apply off-campus because, coincident with Mr. Frederick's display of the banner, some students were allowed to go and watch this non-school event. Now, we know it was not a field trip in the traditional sense of away from campus, student or parent permission slips, student chaperones, and so on, but they analogize it to a field trip. It leads to the question, what if there were a true field trip with parent permissions, with teachers along to supervise, and they went to some public place away from campus, and there they happened to encounter Joseph Frederick and his banner? Would the school then suddenly, because there were students there on a field trip, have authority to punish Joseph Frederick for what he was displaying on that banner? Was he on the field trip or not? No, he was not. He was not under the jurisdiction of the school, whether the other students were on it or not. He was not. He had not been to school. He was not released. I'm talking about your example. You talk about the example of the field trip, but you don't tell us whether Frederick was on the field trip for the rest of the students or just showed up. I was assuming exactly the same situation here where he was doing it independently. I will say one thing to note on the record is that it was a matter of Joseph joining other students who happened to be there. He went there first, went to the far side, the non-school side of the street, and then other students came over and joined him. Not only other students, but non-students. She sees the banner from at least one non-student as well. The other theory that they stretch beyond the breaking point is the theory that speech which is offensive to somebody, to the principal, can be punished, can be prohibited when it's done by a student, even if it's not vulgar or obscene or lewd under Frasier. Now, we know of no case in this circuit or no U.S. Supreme Court case which adopts the theory that offensive can be stretched to the point where a public official can apply it to non-lewd, obscene things that just happen to offend a particular official's sensibility, even if it's for good reasons. In the Chandler v. McMinnville case, for instance, the students wore buttons or had signs that said scab, a term that is highly offensive to some people. Yet this court decided it's appropriate for a tinker analysis, substantial disruption, is that the question, rather than a Frasier conclusion that, well, that's an offensive term and therefore the school can punish it, I'd like to save the rest of my time, if I might. Thank you, counsel. Counsel, please proceed. And may it please the court, my name is David Crosby. I'm here this morning on behalf of Angelo Douglas High School principal, Deborah Morse. I'd like to address first a few of the questions that were raised by the court. The court asked, was it true that he never went to school at all that day? That is not correct. He was on his way to school. The reason why he wasn't in class is supposedly that his car was stuck. It was his intent to proceed to school, and he did, in fact, proceed to school after this incident. Hold on a sec. You said it was incorrect that he had never been to school that day, if I understood you right. And then what you said was, he was on his way to school, which seems to be consistent with it being correct that he was never at school that day. I'm sorry, Your Honor, I thought the question was, did he ever go to school that day? And the answer is that he had not been to school prior to this incident. Then he went to school later. Correct. Okay. I understand now. Now, as for whether or not he was under the jurisdiction... He had not been in school, and then he wasn't in school and then released for the Olympic torch relay where he held up the sign. Is that correct? He had not been in school. He had been in school the day before when it was announced that the classes would be released to go to this particular function. But he wasn't in school and then released for this. That's correct. That's correct. Now, if you look at the picture that's in the record of the students holding up the banner, all Ms. Morse knew was that Mr. Frederick was an enrolled student. He was standing with other students. It was during school hours when parents expect their children to be under the supervision and care of a school administrator. Let me pose a hypo to you. I went to school in the Washington, D.C. area, and they used to release us for Inauguration Day, so we could go watch the inauguration if we wanted. Back then, there never used to be counter demonstrations, but at the last inauguration there was a counter demonstration. Let's suppose that on Inauguration Day, a principal saw somebody that she knew to be a student in her school holding up a banner that opposed whoever was getting inaugurated and got mad, tore it down, said that's not the way students at my school should talk. Has that teacher violated First Amendment rights of the student? In your hypothetical, the students took out a few things from this case, like the drugs, and left other things the same. You used the word release. This is not a situation where the school said you don't have to come to school this day. The students were expected to come to school. They were then permitted to go out in the limited area in front of the school on either side of the street for the purpose of watching this particular function in which students were participating. The band participated, the cheerleaders participated, athletes were running in this. There was a decision made at the district level and at the building level that this was a function that had some educational and some civic value. For that reason, the students were permitted to go outside the classroom, onto the street, under the supervision and control of their teachers and administrators. That's a very different situation from just saying you don't have to come to school tomorrow because it's Inauguration Day. In that particular instance, they are not under the supervision, the control, and the jurisdiction of their teachers and administrators. As far as the message, it's one thing to say I oppose this particular candidate. That's obviously an expression of political belief. The question in this case is, is there something that's different about messages that are pro-drug and alcohol messages? Let's now take the drug aspect of the case. Your concern with that is it's against public policy. I have trouble grasping why you're focusing on that. It seems to me that the essence of free speech is to be able to oppose government policy. And in Tinker, the leading student free speech case, the students were opposing government policy. Government policy was to prosecute the war in Vietnam. The black armbands expressed hostility to that policy. Now, there's a federal statute that requires the Juneau School District to certify that in its programs, it consistently conveys the message that use of illegal drugs. Sure. I thought that statute meant that if they're going to take federal money for the federal anti-drug programs, their message has to be anti-drug and not pro-drug in the program. But I don't get where it can mean that they control independent, non-school sponsored speech and make everybody else adhere to government policy. All right. In the Fraser case, now, counsel would limit Fraser to expressions that are simply vulgar, obscene, swear words, that type of stuff. But if you look at Fraser, it's talking about something much broader. It talks about schools not having to tolerate speech that is inconsistent with the educational mission of the school. It talks about inculcating societal values. The Fraser has very many distinguishing factors from this case. First of all, it was a kid at a school assembly giving a speech on campus as part of the curriculum of the school. The language was lewd and offensive and highly insulting to girls and perhaps very inappropriate for other members of the audience. And it was one of those school-sponsored event type cases, and the language was extreme. I don't see at all how Fraser applies in this circumstance where it's off campus. The language, who knows what it means or does it convey any effective message at all. It's not lewd or obscene. And by the way, I mean, obscenity isn't even, foul language is protected by the First Amendment, but obscenity isn't. I don't know exactly what was in that, but it's not. Even if you lay your own interpretation on it, this language doesn't rise to the level of the language in Fraser. You've raised a number of issues. The first is, does Fraser just apply to speech that occurs at some kind of school function or assembly? This circuit has said that the Fraser analysis applies regardless of whether the speech occurs at a school function or whether there's any disruption involved. Now that, the question then becomes, are we talking about Fraser? Which case is that where Fraser applies? I beg your pardon? Which case is that where Fraser applies? Chandler. Chandler, and it applies out of school under Chandler? The question of in school, out of school is a question about where does the jurisdiction of the school administrators extend? Do you cut it off at the school property boundary, even though the students are still part of the student body? For example, if you say that you can't use vulgar speech in an assembly the way the student did in Fraser, does that mean that the student could wear those same words on a T-shirt and walk around in the high school? And if you're going to take that student on a... So you think Cohen versus California would have to come out the other way if, although he was not in high school, the person had been a student and the principal had been offended by the jacket? I'm sorry, I'm not. You're not familiar with Cohen? I am familiar with Cohen, but I'm not getting the gist of the question. Why would it have to come out the other way? Well, as I understand it, you're thinking if Cohen had been a high school student and the principal had been offended by the jacket that Cohen wore to the courtroom, then the principal could discipline Cohen and he would not have a constitutional right to wear that jacket. If he wore the jacket into the classroom? No, the courtroom is where he wore it. Into the courtroom. When he's not under the jurisdiction of the teacher? No. But if the teacher takes her classroom and brings it to the courtroom, it's absurd to say that the teacher could tell the student, you may not wear this jacket. So it's a field trip to the courtroom. Right. Okay, I get your distinction now. Let me ask you something about your extension of Fraser. You say it should not be confined to sexual innuendo and that sort of thing, but I understood this language in Chandler to mean the opposite. At page 529, we conclude as discussed below that the standard for reviewing the suppression of vulgar, lewd, obscene, and plainly offensive speech is governed by Fraser, school-sponsored speech by Hazelwood, and all other speech by Tinker. How does your argument square up with that statement in Chandler? I guess the question here is whether offensive means something other than lewd and vulgar and obscene. Well, actually, what's interesting about that is it says plainly offensive, which has to be an objective standard as opposed to a subjective standard. Right. Plainly, any person would understand it to be an offensive type of statement. Any person would understand. In fact, the Supreme Court understood that language that promotes drugs and alcohol use by minors is inconsistent, I believe, with the civilized values of society, what they said. Language that... I beg your pardon? Are you saying the Supreme Court would prohibit language that would advocate drug use? I am saying that the Supreme Court would permit teachers and administrators in the classroom and in situations where the students are under the control of their teachers and administrators would permit them to suppress that kind of language as inconsistent with the mission of the schools, as inconsistent with their duty to teach values, as inconsistent with their duty to the parents and the community to promote safety within the schools. Boy, I would hope not. I would hope that you would be allowed to have a free and open discussion in the high schools of drug use. I mean, it just seems to me that that's what education is all about, discussing various attitudes and views and, you know, coming to a conclusion that this is not a good thing. But, you know, at least to have an open discussion ought to be something that would be encouraged. It is possible to have an open discussion about the legalization of marijuana. There is a policy called a controversial issues policy in the school. You can talk about these things in an academic setting in which factors such as safety are brought out. What the school does not permit is this kind of sloganeering. It doesn't permit them to wear T-shirts that say, this buds for you. How does that contribute to the debate about marijuana? This is not a case about Joe Frederick's rights to express his political views. He was asked repeatedly, were you trying to convey a political message? He said he was not. You know, it seems to me like your demands here would outlaw bumper stickers because they're just too crude and primitive in expression. There's not enough content. If I see a bumper sticker that says Knowles or Lisa, it doesn't tell me why I should vote for Knowles. It doesn't tell me why I should vote for Lisa. It doesn't say what's good about Knowles or what's good about Lisa. All it has is their name. Nothing there in the way of content. So you're saying that's not protected by the First Amendment? No, it is. There's nothing that would prevent Joe Frederick from putting a bumper sticker on his car that says, bong hits for Jesus. And parking it on campus? I beg pardon? And parking it on campus? He probably couldn't park it on campus. But he'd park it across the street from campus. But if he wants to drive around the streets with it, that's his business and it's not the principal's business. But when... What is the difference between him driving down a street with a bumper sticker that says bong hits for Jesus and his not going to school that day and instead holding up a sign on the sidewalk across the street that says bong hits for Jesus? Obviously there are limits. There are lots of things that you don't permit kids to do in school that happen outside of school that the school has no jurisdiction over. That's the parent's problem. But when they bring it into the schools, that's the school's problem. The schools are asked to maintain a consistent message that drug use by adolescents or drug use period is not healthy. The federal statute says you have to be consistent in maintaining that it is wrong, that it is illegal, that it's unhealthy, that it is harmful. Now how are you supposed to do that when you've got these peer pressure coming from the other direction that mocks that whole policy that says don't worry about that, bong hits for Jesus, it's good. What you're asking us to find is that that was the meaning of this sign and that given that that's the meaning that everyone would recognize that it falls in the plainly offensive category under Frazier. But most of the testimony in the record is that there is only one person who understood it in the way you're describing it and no one else did. Most people don't even seem to, I mean when I first read it, I didn't, I've been trying to figure out what it meant myself. How can it be plainly offensive? Now when you say there's nothing in the record, what's in the record is the affidavit or the declaration that was submitted by the school principal. That's all that was submitted on that side. There were affidavits that were submitted by four or five of Joe Frederick's friends who said that they didn't know what it means. When I asked Joe Frederick at his deposition, do you know what bong means? And he said yes, he knew what bong means, it's a pipe that's used for smoking. And does he know what hit means? Yes, hit means to take, to ingest marijuana smoke. He knew that. He also knew, he said many people would understand this to be a drug reference. Now this is a young man who was sailing as close to the wind as he could get. Let's say he works after school. Let's say the high school student works after school for a few hours a day at the videotape rental store across the street. And among the tapes that the store rents out and he rents out as clerk there are Cheech and Chong tapes. Can he be disciplined? No. It seems like that's a clear pro-drug message. It's a student in the school renting out the tapes. You're saying he's renting out the tapes in the school? Cheech and Chong. As I recall it was in the 70s and it made light of marijuana use. This activity is taking place across the street after school hours? That's right. There's no jurisdiction over him at that point. We're talking about during the school day when parents expect their kids to be under the jurisdiction and the care of their teachers and their administrators. There are all kinds of things that can go on outside of that period of time, but during that period of time they have the responsibility to look after these kids. What if this were a tort case? What if Joe Frederick was standing where he was standing and he was hit by a snowball and lost his eyesight in his eye because the teachers and administrators failed to maintain discipline? What if he was hit by a car because they hadn't maintained traffic? It's clear that under those circumstances the school district would be liable and it would be responsible. Authority is just the flip side of that responsibility. It occurred during school hours. He was with students. It was at a function that was supervised by the school district at that point. He was with students. The need for the school's control doesn't get less when you take the students off campus. It gets more. When they are with you, when they are in a school activity, they are under your jurisdiction. The liberal rules with respect to search and seizure apply to them. There are cases in the First Amendment area where speech is formulated off campus, but it is beamed back onto campus by a student. At that point the student becomes subject to the rules and regulations of the school. In this instance, he was standing directly opposite from the high school. He held up a banner. If you look in the record, you can see what was seen from the school property directly across the street, beamed that message back to his fellow students. How is the school supposed to maintain a consistent message that drugs are wrong and they're harmful when you get the peer pressure coming from the other direction with this kind of debate about whether or not to legalize marijuana? Joe Frederick said it wasn't a rational debate about whether to legalize marijuana. Let me interrupt you. Let's assume you're right that there was some impact or effect in the school. Was it a substantial disruption of the school, this fleeting showing of the sign, a substantial disruption of the school's anti-drug message and curriculum? I think it was a substantial disruption. How? Following this, there was graffiti all over the school. Wait, no. This act, what he did, that he was suspended for, how is that a substantial disruption? Holding up the sign. All I can say to you is that, number one, I don't think that this court or the Supreme Court requires a physical disruption in order for it to be legalized. It's a substantial disruption. It's substantial. Let's say it affected some kids, but how was it substantial under the meaning of the First Amendment jurisprudence? If one student is turned away from the teachings about the harms of illegal drugs, is that substantial enough? Or does it have to be 50 students or 25 students? And who gets to decide that? Are the federal courts going to come in and decide when these kinds of messages create a substantial harm or maybe just a little bit of harm? The Juneau School Board, the elected officials who run that district, said that these kinds of messages are inconsistent with our basic educational mission. They are disruptive to the learning environment. And that's a judgment by the people who run the schools. And it is not So you're saying that the federal court should defer to the school board, is what you're saying. As to the harm of that message, I believe it should. I mean, there's no question about it. This is a case about Was there any evidence that one student decided to start smoking marijuana as a result of the sign in the record? No. Is that the kind of evidence that a school district is going to have to bring to this court before it will be permitted to No, I'm just saying that this is your argument. I'm wondering if there's any evidence in the record that's supporting your argument. There is evidence in the record that Juneau Douglas High School has a severe drug problem. That 60% of the students by the time they graduate will be involved with marijuana, which is above the national average. If this kid had Xeroxed 100 copies of the Alaska Supreme Court decision, Raven versus State, I assume you're familiar with that. And then that was the decision where the Alaska Supreme Court held that there is a constitutional right under the Alaska Constitution to prohibit students who possess amounts for personal consumption of marijuana in the home. If he had Xeroxed 100 copies of Raven off school property on his own time, gone down to Kinko's, and then he came into school and passed them out, would the school be able under the Constitution to discipline him? No. The Raven decision clearly says that use of marijuana by minors is illegal and that the state can prohibit the use of marijuana and the possession of marijuana by minors. So it's because of that qualification in Raven that you think he'd be able to distribute it. If he distributed a copy of Raven and he didn't have the whole decision, he just had what he regarded as the good parts, would they be able to discipline him? I don't think so. And that question, I honestly can't say whether this question was asked in the deposition. I believe that it was of the principal. And she said, had he held up a sign that said legalize marijuana, she probably would not have reacted that way. I mean, the issue here is sloganeering. It's the kind of sly student code in context that says that using marijuana is okay. Wait a minute. I'm missing something here. I understand that bong hits for Jesus makes no sense, that it's absurd. But the message on the jacket that Cohen wore to court also made no sense. It's physically absurd. I don't understand where the absurdity matters. I don't think that this was absurd. I think that this was Joe Frederick trying to leave himself an out. But he knew what bong hits was all about. And the principal knew what bong hits were all about. And the kids in that school knew what bong hits were all about. Look, either it has meaning or it doesn't. If it has no meaning, then it's not a pro-drug message. If it has meaning, then it is a pro-drug message. And if it's a pro-drug message, I don't see how that could be a pro-drug message or the anti-draft message. This would be the only court ever to decide that. There's not one single court at any level in federal or state jurisdiction that has failed to uphold a regulation by a school prohibiting the promulgation of pro-drug or So if they're having a discussion in the schoolroom and a student says, I think it's bad to criminalize marijuana use, I think marijuana is good for many things, then he lists a bunch and he gets disciplined for it, you think it might or might not be a wise exercise of discretion to discipline the student, I don't think so, but that's not this case. This case isn't about an attempt to provoke a rational debate about whether or not marijuana should be legalized. This is about a student putting up a sign that undercuts, that mocks, that satirizes the seriousness with which the That's a different situation. Now when that other case comes up, I don't know how the court should decide it. But I don't think that there is a single court that has ever passed upon this kind of issue that has said that it is inappropriate for school teachers and administrators to suppress those kinds of messages. Drug messages are different.  Thank you, Your Honor. I have only just a few brief points to make in rebuttal. Mr. Crosby mentioned the beam back theory. And as we acknowledged, there was a possibility that a few students could have for a few seconds seen the banner and possibly taken something from it, although there's nothing in the record to indicate that any of them did. My point is simply that in other cases in which there is an effect, a theoretical effect on campus, something that occurs off campus, the courts have always said, OK, you analyze it under Tinker. Is there an imminent substantial disruption of the educational process? Second, Mr. Crosby raised the hypothetical of, well, what if while he was doing this, a car came along and hit him? I think it is absolutely clear that given the circumstances, that he was there on his own, hadn't been at school, hadn't been released with any class, that the school would have denied that it had any liability whatsoever. The court see it that way? Did the court... Would the court see it that way? I mean, it's one thing for them to deny. I assume they'd always deny liability. That is true. But I think the court would analyze it in precisely those terms. Had he been there? Had he been released? Was he with a class? Was he with a teacher under active supervision? That kind of factor. And they would look, probably in the end, I believe, look to the fact that he was there independently, by choice, had not been on campus, had not checked in for any class, had not been released from any class. So in your view, this case would be entirely different if he'd been in school and then just gone across the street and come back again? If that had been the case, then you would analyze it in terms of what standards, what constitutional parameters apply to conduct, either on campus or off campus, but in that kind of supervised setting. And that's where, once again, I think that this... Would you analyze it for this message? I think then we'd look at Birch v. Barker, for instance, and look at the question of whether what he did would have a substantial disruptive effect on campus. And as the court said in that case, a mere undifferentiated fear of some possible remote harm is not sufficient. And that is precisely what we are dealing with here. There is no allegation other than undifferentiated fear of some possible remote harm. You don't take seriously the suggestion of opposing counsel that drugs are different? I don't find anywhere in which they're different. Mr. Crosby alleged in his brief that there were a number of cases in which courts have treated drugs differently. In our reply brief, we show that not a single one of them, in fact, gave leave to suppress student speech because it involved drugs. There simply isn't one of them. The only exceptions that are even remotely out there are the Supreme Court's two cases having to do with urine analysis of student-athletes, students in extracurriculars for drugs. And so far, at least, the Supreme Court has tailored those very narrowly to fit those particular... He thought those were about urinating, not speaking. Right, exactly. The First Amendment wasn't involved. It was simply a matter of drug use. And there are no cases that says particular words can be banned by the school because the words relate to drugs or alcohol. Very quickly, since the red light has gone on, he asserted that these prescriptions are available because there is a severe drug problem. The only thing in the record about that is the newspaper article which they submitted and which we did not object to because the newspaper article says it's not a severe problem. It's better than it used to be or about average. I think that concludes my remarks. Thank you, Counsel. Frederick v. Morse is submitted. Judge Hall reminded me that we really ought to commend counsel on both sides for your excellent briefing and argument in this case. We appreciate it. Thank you. Frederick v. Morse is submitted, and we return until 9 a.m. tomorrow. All rise.
judges: Hall, Kleinfeld, Wardlaw